IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00609-PAB-SKC

CHRIS MICHAEL FAFEJTA WILSON,

 Plaintiff,

v.

DEPUTY PAULS,

 Defendant.

___

# ORDER
___

This matter is before the Court on Defendant Gary Pauls' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 94]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This action arises from an assault on June 13, 2019 at the Mesa County Detention Facility ("MCDF"), where inmate David Castro repeatedly stabbed inmate Chris Fafejta Wilson, plaintiff, in a cell block called "Cedar 2 Pod." Docket No. 94 at 2; Docket No. 106 at 1.[2] The defendant, presumably a deputy with the Mesa County Sheriff's Department, was assigned to the guard station bubble at the time of the attack. Docket No. 94 at 5, ¶ 22. The attack lasted for four minutes and twenty-three seconds,

---

 [1] The following facts are undisputed unless otherwise indicated.
 [2] The parties included this fact in the introduction sections to their briefs, not in the statement of facts. However, the Court finds that the parties do not dispute that inmate David Castro stabbed plaintiff in Cedar 2 Pod on June 13, 2019.

during which period Castro stabbed plaintiff approximately sixty times. Docket No. 106 at 7, ¶ 16; Docket No. 113 at 4, ¶ 16.[3]

The attack began at 3:54:06[4] by the microwave in Cedar 2 Pod. Docket No. 106 at 6, ¶ 6.[5] During the attack, Castro and plaintiff were standing up from 3:54:06 to 3:54:45. *Id*. at 7, ¶ 11. At 3:54:45, Castro and plaintiff were struggling on top of the table in the middle of the pod. *Id*. At 3:54:49, the attack moved to the ground. *Id*., ¶ 12. On the floor, plaintiff and Castro were blocked by a lunch table, such that defendant could not see them during a significant portion of the attack. Docket No. 94 at 5, ¶ 20. Other inmates were present in Cedar 2 Pod during the assault. *Id*., ¶ 19.[6]

In the guard station bubble, computer screens are located right below the windows looking into Cedar 2 Pod where the attack occurred. *Id*. at 4-5, ¶ 18.[7] Defendant did not have the cameras of the pods pulled up on his computer screens. Docket No. 113 at 3. It is difficult to hear noises from Cedar 2 Pod in the guard station bubble. Docket No. 94 at 5, ¶ 22. Defendant was facing the direction of the attack at 3:54:08 and continued facing that direction until 3:54:19. Docket No. 106 at 6, ¶ 7. At 3:54:19, defendant looked over to Cedar 1 Pod and then looked back to Cedar 2 Pod and continued facing the direction of Cedar 2 Pod until 3:54:33. *Id*., ¶ 8. At 3:54:26,

---

[3] Plaintiff describes the object that Castro used to stab plaintiff as a "shank." Docket No. 106 at 7, ¶ 16. Defendant describes the object as a "shiv . . . fashioned from a broken dayroom chair." Docket No. 94 at 2.
[4] The times referred to herein are time stamps from three videos from security cameras in Cedar 2 Pod.
[5] The parties dispute when defendant first saw the attack occurring. Docket No. 106 at 3-5, ¶¶10-11, 14-18, 23-24; Docket No. 94 at 5, ¶¶ 23-24; Docket No. 113 at 1-2.
[6] The parties dispute how the other inmates were behaving during the attack. Docket No. 94 at 5, ¶ 19; Docket No. 106 at 5, ¶ 19.
[7] The parties dispute whether defendant's view into Cedar 2 Pod from the guard station was obstructed. Docket No. 106 at 6, ¶¶ 2-4; Docket No. 113 at 3.

Castro was stabbing plaintiff while they were standing. *Id*., ¶ 10.[8]  Several minutes later, defendant called a code 1 emergency alert. *Id*. at 7, ¶ 13; Docket No. 113 at 3.[9] Responders arrived within thirty seconds after defendant called the code 1 alert. Docket No. 106 at 7, ¶ 15.  Average response time following a code 1 call is between ten to thirty seconds. *Id*., ¶ 14.

Plaintiff believes the attack was either gang related or related to a criminal trial with some defendants aligned with Castro.  Docket No. 94 at 4, ¶ 12.  Prior to the attack, plaintiff had been incarcerated at MCDF for nearly three years and had been in Cedar 2 Pod for about a year without incident.  *Id*., ¶ 13.  An attack of this severity is extremely rare at MCDF.  *Id*. at 5, ¶ 26.  Defendant had never seen an inmate-on-inmate attack in Cedar 2 Pod before or after the attack on plaintiff.  *Id*., ¶ 25.  Defendant routinely did not pull up the security cameras in Cedar 2 Pod because he believed that he had an adequate view of Cedar 2 Pod.  *Id*., ¶ 21.  Plaintiff admits the guards at MCDF generally do their jobs well.  *Id*. at 6, ¶ 27.  Neither MCDF nor defendant had any advance notice of the attack.  *Id*. at 3, ¶¶ 8-9.  An investigation by the Professional Standards Unit of the Mesa County Sheriff's Office concluded that there was no evidence that defendant knew anything of the attack before he called the code 1 alert. *Id*. at 6, ¶ 28.

---

[8] The parties dispute whether defendant was looking at his computer screen or above the computer screen into Cedar 2 Pod at 3:54:26 when Castro was stabbing plaintiff.  Docket No. 106 at 6, ¶ 9; Docket No. 113 at 3.

[9] The parties dispute what time defendant activated the emergency alert.  Plaintiff states that defendant called the code 1 in at 3:58:00.  Docket No. 106 at 7, ¶ 13. Defendant maintains he reached for the phone to call a code 1 at 3:57:58.  Docket No. 113 at 3.

3

Plaintiff filed a grievance after the attack. Docket No. 106 at 2, ¶ 7; Docket No. 113 at 1. Plaintiff never served Mesa County with a statutorily required 182-day notice to preserve any state law claims. Docket No. 94 at 3, ¶ 3. Throughout his incarceration at MCDF, plaintiff has filed over 100 kites as well as several grievances and appeals. *Id*., ¶ 5. Plaintiff was aware of the kite system and understood how the process worked. *Id*., ¶ 6.

Plaintiff filed suit against defendant pursuant to 42 U.S.C. § 1983 for failing to protect him from the attack in violation of the Eighth Amendment of the United States Constitution. Docket No. 19 at 7; Docket No. 106 at 1.[10] Defendant moves for summary judgment on the failure to protect claim, arguing that plaintiff provided no evidence that defendant saw the attack and subjectively and deliberately decided not to act. Docket No. 94 at 1, 7-13. Defendant also invokes qualified immunity and claims that plaintiff failed to exhaust his administrative remedies. *Id*. at 1.[11]

---

[10] The parties' pleadings and the Court's prior orders have referred to plaintiff's failure to protect claim as an Eighth Amendment claim. However, as plaintiff's response to the summary judgment motion indicates, the claim is actually a Fourteenth Amendment Due Process claim, rather than an Eighth Amendment claim, because plaintiff was a pretrial detainee at the time of the assault. *See* Docket No. 19 at 3; Docket No. 106 at 9. The substantive standards for failure to protect are the same under the Eighth Amendment and Fourteenth Amendment. *See Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009).

[11] Defendant also moves for summary judgment on the grounds that plaintiff failed to preserve any state law claim via a 182-day notice and that plaintiff adduced no evidence of an objective threat of serious harm prior to the attack. Docket No. 94 at 1. Plaintiff does not assert any state law claims against defendant. Docket No. 106 at 16. Plaintiff also does not argue that defendant had any advance warning of the attack. *Id*. at 10. Defendant's reply acknowledges that the "only live issue in this case is whether Deputy Pauls was deliberately indifferent in failing to protect Mr. Fafejta during the attack itself." Docket No. 113 at 4. As a result, the Court will not address these two arguments in defendant's summary judgment motion.

## II. LEGAL STANDARD

### A. <u>Summary Judgment</u>

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of

each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

A constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Surat*, 52 F.4th at 1276. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v. Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Yehia*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022). "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts. We ask whether the existing law provides fair warning to a defendant." *Shepherd*, 55 F.4th at 815 (citations omitted). "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Yehia*, 38 F.4th at 1294 (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017)); *see also Surat*, 52 F.4th at 1276 (noting that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances").

## III. ANALYSIS

### A. Failure to Protect Claim

A violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutional liability. *Id.* at 833-34. An inmate asserting an Eighth

7

Amendment claim must demonstrate that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) defendants were subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Id*. at 834, 847; *Martinez*, 563 F.3d at 1088.[12]

To satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the prison official did in fact "draw the inference." *Id*. at 837. A prisoner must establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (citation omitted).

---

[12] Failure to protect claims often arise when an officer fails to take appropriate protective action to prevent a future assault from occurring. *See, e.g.*, *Miller v. Kastelic*, 601 F. App'x 660, 664 (10th Cir. 2015) (unpublished) (denying summary judgment on Eighth Amendment claim where prison official failed to act after being informed that inmate was being threatened by his cellmate); *Parker v. Zavaras*, No. 08-cv-00737-MSK-KLM, 2011 WL 1211487, at *10-12 (D. Colo. Mar. 31, 2011) (holding that "a prison official's decision to ignore an inmate's specific allegations that he was in danger from specific gangs and to place him in a cell with gang members violates the prisoner's constitutional rights"). However, a failure to protect claim can also arise when an officer fails to intervene during an ongoing inmate-on-inmate assault. *See Hooks v. Bethany Police Dept*., 2018 WL 11266782, at *6 (W.D. Okla. Mar. 19, 2018) (collecting cases). A claim based on a failure to intervene theory is evaluated under the same *Farmer* standard. *Id*.

"[D]eliberate indifference entails something more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Durkee v. Minor*, 841 F.3d 872, 876 (10th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

The Court finds that plaintiff has established the objective prong of his failure to protect claim. Plaintiff argues that there was a "threat of imminent harm once the attack began." Docket No. 106 at 10. Plaintiff cites evidence that Castro struck plaintiff with a shank over sixty times in the neck, face, arms, and upper torso over the course of four minutes and twenty-three seconds. *Id*. at 7, ¶ 16. The investigation of the Mesa County Sherriff's Office stated that plaintiff suffered "serious bodily injuries and Castro was later criminally charged with Attempted Murder." Docket No. 94-5 at 11. Defendant, in reply, argues that plaintiff assumed the existence of an objectively serious risk of harm and cited "no evidence regarding the objective nature of the harm inflicted during the attack or when that harm was inflicted." Docket No. 113 at 5. The Court finds defendant's argument unpersuasive. The harm plaintiff complains of, namely, being stabbed repeatedly by another inmate, is sufficiently "serious" to satisfy the objective prong. *See Martinez*, 563 F.3d at 1088; *see also Woodyard v. Ala. Dept. of Corr.*, 700 F. App'x 927, 933 (11th Cir. 2017) (unpublished) (finding a substantial risk of serious harm when one inmate stabbed another inmate with a knife).

The Court turns next to the subjective component.  The defendant argues there is no evidence in the record that he saw the attack as it unfolded and, therefore, he was not deliberately indifferent to a substantial risk of harm.  Docket No. 94 at 12.  Although defendant looked over to Cedar 1 Pod at 3:54:19, it is undisputed that defendant, located in the guard station bubble, was facing the direction of the attack from 3:54:08 to 3:54:33.  Docket No. 106 at 6, ¶¶ 7-8.  It is also undisputed that defendant could not see plaintiff or Castro during a significant portion of the attack because the attack moved to the floor at 3:54:49, where the two men were blocked from view by a lunch table.  Docket No. 94 at 5, ¶ 20; Docket No. 106 at 7, ¶ 12.  Defendant claims that he did not see the attack as it was occurring and only saw the attack when the parties got up from the floor, at which point he immediately called a code 1 to summon security and medical assistance.  Docket No. 113 at 2.  Citing his deposition testimony and video footage, defendant asserts he was distracted for the first forty-two seconds of the attack because he was communicating with an inmate in Cedar 1 Pod and working on his two computer screens.  *Id*.  When Castro was stabbing plaintiff at 3:54:26 in a standing position, defendant argues that he was still looking at his computer screens and had his hand on the computer mouse.  *Id*. at 3.  Defendant also argues that he did not realize an attack was occurring because "other inmates in Cedar 2 Pod were getting coffee, watching TV, and acting as though nothing was happening."  Docket No. 94 at 5, ¶ 19; *see also* Docket No. 113 at 2.

Plaintiff argues that the evidence shows a genuine dispute of material fact as to whether defendant actually saw the attack as early as 3:54:08 and whether he chose to do nothing to assist plaintiff for four minutes.  Docket No. 106 at 13.  Plaintiff claims that

10

defendant saw the attack occurring at 3:54:08 because defendant was facing the direction of the attack from the guard station and his view of the Cedar 2 Pod was not obstructed by his computers. *Id*. at 12.  Plaintiff argues that the video evidence shows that defendant, at a minimum, saw the attack at 3:54:26 because defendant raised his head to look over the computer screen into Cedar 2 Pod at 3:54:26, which is when Castro was stabbing plaintiff while standing within defendant's line of sight. *Id*. at 12-13. Plaintiff testified at his deposition that the assault was right in front of the defendant's line of sight, plaintiff saw defendant looking in their direction during the attack, he could see defendant "watching them," and that plaintiff believed defendant was at a high enough level in the guard station to see past his computer. *Id*. at 13.  Additionally, plaintiff argues that defendant saw the attack because most inmates in Cedar 2 Pod moved to the back of the pod to observe the fight, and the defendant was trained to look for inmate movements in the pod. *Id*. at 3, 5, ¶¶ 10, 19.

The Court finds there is a genuine dispute of material fact as to whether defendant saw the attack as early 3:54:08 or some other time before he called the alert. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant saw the attack minutes earlier and, because of the nature of the attack, was subjectively aware of a risk of substantial harm to plaintiff.  A jury could infer that defendant saw the attack due to defendant's direct line of sight and unobstructed view into the pod, defendant's head position at 3:54:26, the obvious movement of the other inmates during the attack, and plaintiff's testimony that he saw defendant watching the attack.  If defendant saw the attack around 3:54:26 but did not call in the alert until

11

3:58:00, he failed to take any "reasonable measures to abate it" by immediately calling the emergency alert. *See Martinez*, 563 F.3d at 1089.

Defendant argues that plaintiff's evidence is entirely "speculative" because it only shows that defendant had the "opportunity to witness the attack," not actual evidence that he witnessed the attack. Docket No. 113 at 5-8. The Court rejects this argument. A defendant's state of mind for deliberate indifference can be established through circumstantial evidence. *Durkee*, 841 F.3d at 876; *Farmer*, 511 U.S. at 842. In *Durkee*, the Tenth Circuit upheld a denial of qualified immunity to an officer who unshackled inmate Ramos in a booking area, which enabled Ramos to attack another inmate in the nearby visitation room. *Durkee*, 841 F.3d at 875-76. The officer argued he never appreciated the risk to the other inmate because he did not see that inmate in the visitation room before he unshackled Ramos. *Id*. at 875. The Tenth Circuit rejected this argument, holding that a jury could infer what the officer saw based on circumstantial evidence. *Id*. at 876. As the Tenth Circuit recognized in *Durkee*, "[o]f course, no one other than [defendant] may testify to what he *actually saw*. . . [b]ut others may testify to the surrounding circumstances and what they witnessed. . . a jury could reject [defendant's] testimony and infer that he too saw Plaintiff in" Cedar 2 Pod as the assault was occurring. *See id.* (emphasis added). Because a genuine issue of material fact exists as to whether defendant was subjectively aware of and disregarded a substantial risk to plaintiff's health and safety, summary judgment is not warranted.

### B. Qualified Immunity

Defendant argues that he is entitled to qualified immunity on the failure to protect claim. Docket No. 94 at 15-17. Plaintiff has satisfied the first prong of the qualified

12

immunity defense by adequately alleging a violation of the Eighth Amendment. The Court therefore turns to the question of whether the right was clearly established. Plaintiff argues that the law was clearly established that defendant violated plaintiff's constitutional rights when he was aware that plaintiff was being attacked by another inmate with a shank and failed to call an emergency alert for over four minutes. Docket No. 106 at 14-16. Plaintiff cites *Farmer*, which recognized that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. Plaintiff, citing numerous Tenth Circuit cases, argues that an inmate has a right to be protected from constant threats of violence or sexual assault from other inmates. Docket No. 106 at 15 (citing *Howard v. Waide,* 534 F.3d 1227, 1242 (10th Cir. 2008); *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). Plaintiff also argues that the unlawfulness of defendant's conduct was so "obvious" that there does not need to be a materially similar factual case for the right to be clearly established. *Id*. at 15-16 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).[13]

The Court agrees with plaintiff. It is clearly established in the Tenth Circuit that an inmate has a constitutional right to be protected from substantial risks of assaults by

---

[13] In reply, defendant argues that the cases cited by plaintiff "do nothing to establish that Deputy Pauls acted against clear authority by being in a position to witness the attack without seeing it." Docket No. 113 at 9. This argument misstates the basis of plaintiff's claim. Plaintiff argues that defendant in fact saw the assault in progress and allowed the attack to continue for over four minutes. *See* Docket No. 106 at 16.

other inmates.  See *Farmer*, 511 U.S. at 833-34; *Waide*, 534 F.3d at 1242; *Ramos*, 639 F.2d at 572; *Durkee*, 841 F.3d at 876 n.2.  *Farmer* does not, in all cases, settle every question with respect to prison officials who fail to prevent an assault.  See *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050-51 (9th Cir. 2002) (holding that it is not always sufficient, for purposes of the second prong of the qualified immunity analysis, "that *Farmer* clearly states the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate").  However, here, a jury could find that defendant saw the attack occurring nearly four minutes before he called the emergency alert.  Under *Farmer* and the Tenth Circuit cases, any reasonable guard in defendant's position would have known that the failure to take *any action* for four minutes while witnessing an inmate repeatedly stab another inmate with a shank violates the Eighth Amendment.  See *Durkee*, 841 F.3d at 876 n.2 (denying qualified immunity because any reasonable officer "cognizant of Plaintiff's presence in the unsecured visitation room would have understood that unshackling [another inmate] in the booking area posed a substantial risk of harm to Plaintiff in violation of the Eighth Amendment").  The Court finds that the conduct in this case is so "egregious," that *Farmer* would apply with "obvious clarity."  See *Yehia*, 38 F.4th at 1294.

Furthermore, the clear weight of authority from other circuits supports the denial of qualified immunity in this case.  See *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) ("a correctional officer who stands by as a passive observer and takes *no action whatsoever* to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate." (emphasis in original)); *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("If [an officer] did witness an inmate assault, but failed to

14

intervene, his actions would seemingly 'constitute a paradigm case of deliberate indifference.'") (citation omitted); *Evans v. Cameron*, 442 F. App'x 704, 707 (3d Cir. 2011) (unpublished) (discussing how the Third Circuit has held that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."); *Woodyard*, 700 F. App'x at 934 (holding that an officer's failure to respond for five minutes while one inmate stabbed another inmate violates clearly established law); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *cf. Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) (noting that prison guards have "no constitutional duty to intervene in the armed assault of one inmate upon another *when intervention would place the guards in danger of physical harm*") (emphasis added).

For the foregoing reasons, defendant is not entitled to qualified immunity on the failure to protect claim.

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This requirement reaches 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force

or some other wrong.'" *Galindo v. Gentry*, 643 F. App'x 807, 808 (10th Cir. 2016) (unpublished) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). An inmate's obligation to exhaust administrative remedies is mandatory. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA."). The sole exception to exhaustion is that an inmate is only required to exhaust "available" remedies. *See Ross*, 578 U.S. at 639. The exhaustion doctrine is an affirmative defense. *Jones*, 549 U.S. at 211-12. As a result, the defendant bears the burden of asserting and proving failure to exhaust. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). Generally, "a party waives issues and arguments raised for the first time in a reply brief." *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

In his motion for summary judgment, defendant argues that plaintiff failed to exhaust his administrative remedies regarding any risk of harm from his incarceration or classification. Docket No. 94 at 17. Specifically, defendant asserts that "Plaintiff never filed a kite (let alone an appeal) regarding a serious risk of serious harm from remaining in Cedar 2 Pod, where he resided for over a year prior to the attack . . . [a]ccordingly, Plaintiff's failure to exhaust his administrative remedies seeking redress of any such concerns is fatal to any related claim." *Id*. at 18. In response, plaintiff argues that his failure to protect claim is not based on being housed in Cedar 2 Pod for over a year prior to the attack, but rather on defendant's failure to respond when he allegedly saw the attack occurring. Docket No. 106 at 17. Plaintiff argues that he exhausted his administrative remedies by filing a grievance after the attack. *Id*. at 17-18. Plaintiff

16

asserts that once Captain Smith told plaintiff his grievance was not subject to appeal, plaintiff was not required to appeal under the PLRA. *Id*. at 18.

In reply, defendant argues for the first time that plaintiff did not exhaust his administrative remedies after the attack on June 13, 2019 because he failed to follow the prison's process of filing a kite before a grievance. *See* Docket No. 113 at 10. Defendant did not raise this argument in his original summary judgment motion. The summary judgment motion only argued for dismissal based on plaintiff's failure to exhaust administrative remedies regarding the conditions of his confinement prior to the attack. *See* Docket No. 94 at 17-18. The summary judgment motion did not argue for dismissal based on plaintiff's failure to file a kite after the June 2019 attack. *See generally id*. As a result, defendant has waived this argument. *See Nunez v. Heimgartner*, 2018 WL 1427953, at *8 (D. Kan. March 22, 2018) (holding that defendants waived any exhaustion argument that the prisoner incorrectly filled out the grievance form because the summary judgment motion only argued failure to exhaust based on the timeliness of the grievance and the failure to appeal). Defendant's original exhaustion argument in his motion for summary judgment is moot because plaintiff is not alleging that his incarceration in Cedar 2 Pod constitutes a failure to protect. *See* Docket No. 106 at 10. Accordingly, defendant has not met his burden and summary judgment is not warranted based on failure to exhaust administrative remedies.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to plaintiff, the Court finds genuine disputes of material fact preclude entry of summary judgement. For the foregoing reasons, it is

**ORDERED** that Defendant Gary Pauls' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 94] is **DENIED**.

DATED March 20, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge